# EXHIBIT 2

**MEMORANDUM IN SUPPORT OF JOINED RULE 12 MOTIONS:**

**MOTION FOR MORE DEFINITE STATEMENT; MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT PROCESS, ON THE GROUNDS THAT CLAIMS MUST BE ARBITRATED, AND FAILURE TO STATE A CLAIM; AND MOTION TO STRIKE;**

**AND IN THE ALTERNATIVE, MOTION TO STAY THE PROCEEDINGS**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Thomas W. McNamara,<br><br>    Plaintiff<br><br>v.<br><br>Voltage Pay Inc., et al.,<br><br>    Defendant | 2:15-cv-02177-JAD-GWF<br><br>**Order Granting Defendants' Motion on the Pleadings**<br><br>[ECF No. 61] |

    I appointed the plaintiff receiver to wind up the affairs of a group of companies recently involved in a consumer-fraud scheme (the "Receiver Entities").[1] These companies' directors were stealing money from consumers through micro-transactions: making illicit charges on accounts that were too small for consumers to notice. The FTC discovered what the directors were doing and sued them, and I appointed the plaintiff receiver to take over their businesses.

    The receiver brings this case against one of the online payment-processing companies that the entities used to carry out their scheme, Voltage Pay Inc.[2] The receiver alleges that Voltage unfairly profited by accepting fees to process the fraudulent charges on consumers' accounts. The receiver wants these fees back and alleges claims against Voltage for fraudulent transfer, unjust enrichment, and accounting.

    Voltage moves to dismiss, arguing that the receiver has not alleged facts to support any of his claims. I agree. The parties' primary dispute is over the fraudulent-transfer claim. This claim is usually brought by a creditor when one of its debtors tries to divert money to a third party so that the

---

[1] *See Federal Trade Commission v. Ideal Financial Solutions, Inc., et al.*, D. Nev. Case No. 2:13-cv-00143-JAD.

[2] The receiver also sued Voltage's directors and related corporate entities. I refer to them collectively as "Voltage" in this order.

Page 1 of 7

creditor can't get to it. If the creditor can show that the debtor intentionally transferred the money to hamper the creditor, or that the transfer was a sham because no value was given to the debtor in return—the creditor can force the third party to disgorge the money.

The problem here is that the receiver's complaint alleges only that the Receiver Entities paid Voltage in an arms-length transaction for payment-processing services. This would be like treating a burglar's purchase of a crow bar as a fraudulent transfer merely because he later used the tool to carry out a crime. There are no allegations plausibly suggesting that the payment of fees to Voltage was a sham or otherwise a fraudulent transfer of funds. Indeed, the complaint contains few allegations about Voltage at all, alleging only that it was a "middleman" between the Receiver Entities and other payment processors. Because there are insufficient facts to support any claims against Voltage, I grant its motion.

## Background

I recently appointed the receiver after finding that the Receiver Entities's directors committed fraud against consumers by illicitly making charges to their bank accounts.[3] The directors were using the Receiver Entities to obtain consumers' financial information from third-party vendors and run unauthorized charges on their accounts.

The receiver's complaint alleges almost nothing about what role Voltage played in this scheme. It states that Voltage was a "middleman" between the Receiver Entities and some third party companies that processed payments, that Voltage "worked with" third parties to arrange for payment processing, and that Voltage received "fees, fines, and other amounts" of at least $700,000 for doing what it did.[4] What the complaint does not say is what Voltage did to earn those fees.[5]

---

[3] ECF No. 1-1.

[4] *Id.* at 6.

[5] The complaint also alleges that Voltage should have been tipped off that its services were being used to help carry out a fraudulent scheme, because so many consumers were canceling Ideal's charges. In other words, the ratio of charges being canceled from Ideal's orders should have led Voltage to realize that fraud might be underfoot. But, as I explain below, whether Voltage had some inkling of Ideal's fraud is not relevant to the claims the receiver brings in this case.

# Discussion

**A.  Judgment-on-the-pleadings standards**

The standard governing a motion for judgment on the pleadings is functionally identical to a motion to dismiss.[6]  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[7]  While the rules do not require detailed factual allegations, they demand more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[8]  "Factual allegations must be enough to rise above the speculative level."[9]  To survive a motion to dismiss, a complaint must "contain [] enough facts to state a claim to relief that is plausible on its face."[10]

**B.  Fraudulent-transfer claims**

The receiver brings two species of fraudulent-transfer claim: actual fraud and constructive fraud.  The actual-fraud version requires proof that the debtor (the Receiver Entities) transferred money "with actual intent to hinder, delay, or defraud any creditor of the debtor."[11]  Presumably, the creditors here are the Receiver Entities that want their money back.[12]

But the complaint is devoid of any allegation suggesting that money was transferred to Voltage to hinder, delay, or defraud anyone.  The only plausible reading of the complaint's facts is

---

[6] *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

[7] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Twombly*, 550 U.S. at 555.

[10] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[11] *See* Utah Code Ann. § 25-6-5(1); Nev. Rev. Stat. § 112.180(1).  The parties agree on the relevant statutory language.  They also agree that either Nevada or Utah law applies, and that both are indistinguishable for purposes of this case.

[12] The receiver cites some out-of-circuit law to suggest that a more liberal pleading standard should apply to actual fraud claims.  But I need not reach this issue because the receiver has not even alleged a plausible claim under the basic pleading standard set out in Federal Rule of Civil Procedure 8.

that the Receiver Entities paid Voltage in arms-length transactions for its payment-processing services. There are no allegations plausibly suggesting that the payor intended anything else.

The receiver argues that it is enough to allege that the scoundrel directors of the Receiver Entities committed fraud and used Voltage's services as part of that fraud, but not so. The receiver does not cite any on-point authority, and the relevant case law cuts against his position. Courts regularly refuse to claw back money from innocent third parties involved in fraudulent schemes. Even in the context of Ponzi schemes where investors overtly profit from fraud, the payments to the investors are not necessarily fraudulent transfers.[13] The receiver suggests that Voltage conspired in the consumer fraud because it should have realized that Ideal was illicitly charging customers. That may be, but it does not make the fees that Voltage collected for its payment-processing services a fraudulent transfer. Ultimately, to state a claim under an actual-fraud theory, the receiver must allege specific facts suggesting that Ideal transferred money to Voltage to hinder or defraud a creditor. And he has not done that.

The receiver fares no better under the constructive-fraud theory. This claim requires proof that (1) the Receiver Entities were insolvent at the time they paid Voltage fees, and (2) Voltage did not give the Receiver Entities anything of "reasonable equivalent value" in return for these fees.[14] In other words, the receiver must allege facts plausibly suggesting that Voltage's fees were a sham rather than a legitimate charge for services rendered. For example, in *In re Fitness Holdings Int'l, Inc.,* a company on the brink of bankruptcy transferred all of its assets to a single shareholder, purportedly to pay the shareholder back for a loan.[15] The Ninth Circuit held that even though the payment was made when the company was insolvent, it was not a fraudulent transfer if the company received a discharge of a binding loan obligation because that would mean the company received something of reasonably equal value in return for its payment.[16]

---

[13] *In re Nat'l Consumer Mortg., LLC*, 2013 WL 164247, at *11 (D. Nev. Jan. 14, 2013).

[14] *Spear v. Global Forest Prods*, 228 B.R. 727, 729 (9th Cir. B.A.P. 1998).

[15] *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1143 (9th Cir. 2013).

[16] *Id.*

Page 4 of 7

There are no facts from which I can determine whether the receiver can allege a constructive fraud claim here. As to the first element, the complaint does not allege sufficient facts suggesting that the Receiver Entities were insolvent at the time they paid fees to Voltage, because there are no facts about when Voltage received its fees. There are also sparse facts about whether the Receiver Entities were truly insolvent at the time of the transfers. As to the second element, there are no facts alleged about what Voltage charged for its services or what it even did to help process payments, which makes it impossible to determine whether Voltage earned the fees it received.[17] In short, from the sparse allegations in the complaint, I cannot begin to guess whether Voltage gave Ideal something of reasonable value for its fees.

The fraudulent-transfer claims fail for another reason: the complaint does not adequately allege that these claims are timely. The complaint alleges that the fraudulent transfers were made sometime in 2011, and the statute of limitations for this sort of claim is four years.[18] This means that the deadline to file these claims expired in 2015. The receiver filed his complaint at the end of 2015. Because the complaint does not give any indication about when the transfers happened or who made them, the receiver has not sufficiently alleged that any of these claims are timely.[19] For multiple reasons, therefore, I grant judgment on the pleadings in the defendant's favor on the receiver's fraudulent-transfer claims.

## C.  Unjust-enrichment claim

The complaint's sparse facts also undermine the receiver's unjust-enrichment claim. Under Nevada law, the elements of unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit

---

[17] The complaint contains a bare allegation that Voltage acted as a "middleman" between Ideal and other payment processors. But I have no idea what this means because this conclusory allegation is not elaborated upon with facts.

[18] Nev. Rev. Stat. § 112.230.

[19] *Jones v. Bock*, 549 U.S. 199, 215 (2007) (dismissal is appropriate if the allegations show that relief is barred by the statute of limitations).

without payment of its value.[20]

The receiver's vague allegations miss the mark on most of these elements. The receiver alleges that Voltage received a benefit from the Receiver Entities in the form of fees, but that's it. He does not provide any facts fairly putting Voltage on notice of the nature of this claim—such as which entities paid Voltage fees, when the fees were paid, and what the fees were for. Most problematic, Voltage is not retaining the benefit without paying for its value: taking the complaint at face value, it performed the services it was paid for.

The receiver suggests that Voltage was complicit in the fraud, so its fees should be equitably returned.[21] Not only does the receiver fail to offer any authority to support this theory, but the complaint, again, is short on necessary facts. The receiver alleges that Voltage was put on notice of the fraud at some point because there was a high rate of cancelled charges on the consumer accounts. But there are no allegations about when Voltage was put on notice of the charge backs, which matters: the receiver's claims would presumably be limited to fees that Voltage received after it was put on notice of the fraud. More importantly, the complaint does not factually allege that Voltage even knew of these cancelled charges. Nowhere does the complaint plausibly allege that Voltage charged a consumer or had access to payment records. The complaint simply says that Voltage was a "middleman" with payment processors and "knew" what was going on. That is not enough, even at the pleading stage. Because the receiver has not adequately alleged his unjust enrichment claim, I grant the motion on this claim, too.

**D.     Accounting claim**

In Nevada, the elements required to allow a remedy of an accounting are: (1) a fiduciary relationship exists between plaintiff and defendant; (2) the relationship between plaintiff and defendant is founded in trust and confidence; and (3) defendant has a duty to render an accounting to

---

[20] *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010) (collecting authority).

[21] If the receiver means to claim that Voltage must disgorge any fee it charged for its services based only on the fact that the Receiver Entities used those services to commit a fraud, he does not argue this in his briefing and he offers no authority to support that position.

plaintiff to determine damages resulting from any misallocation of funds.[22]

Because the receiver has not alleged any other plausible claims, and because he does not otherwise allege that Voltage has some special duty to account, the accounting claim is not adequately supported at this time. The receiver suggests that he has adequately alleged that Voltage was acting as the entities' agent, so Voltage had a fiduciary duty to support an accounting claim. But labeling Voltage as a "middleman" without any other supporting facts falls short of plausibly alleging the elements of agency.[23] I thus grant judgment on the pleadings on the accounting claim as well.[24]

## Conclusion

Accordingly, IT IS HEREBY ORDERED that defendant's **motion for judgment on the pleadings [ECF No. 61] is GRANTED.**

IT IS FURTHER ORDERED that the receiver is granted leave to amend. He must file his amended complaint by September 11, 2017.

Dated this 28th day of August, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

[22] *G. K. Las Vegas, Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246 (D. Nev. 2006); *Foley v. Mowbray*, 848 P.2d 519 (Nev. 1993).

[23] *See* Restatement (Third) of Agency § 3.03 (explaining that merely performing a service for another does not necessarily create an agency relationship).

[24] In the event that I rule against him, the receiver requests leave to amend. The defendants have not opposed the receiver's request, and the receiver has only amended once thus far, so I grant his request. *See Risos-Camposano v. Nevada Sys. of Higher Educ.*, 2014 WL 5503128, at *10 (D. Nev. Oct. 29, 2014) (granting leave to amend after granting judgment on the pleadings).