**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al.,<br><br>Plaintiff,<br><br>vs.<br><br>ICE LEGAL, P.A., a Florida Profit Corporation, THOMAS ICE, an individual, and ARIANE ICE, an individual,<br><br>Defendants. | Case No.<br>1:25-cv-00275 |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorney for Defendants,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iv

ABBREVIATIONS ........ vii

DEFINED TERMS ........ viii

INTRODUCTION AND BACKGROUND ........ 1

I. The Parties ........ 1

II. The Receiver's third-party claims ........ 1

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION ........ 2

I. Summary of Argument ........ 2

II. The Complaint does not invoke this Court's federal question or diversity jurisdiction. ........ 3

III. The two statutes pled in the Complaint do not provide this Court with subject matter jurisdiction. ........ 4

A. The Court cannot exercise its supplemental jurisdiction because it has no original jurisdiction over any claim in this case. ........ 5

B. The Receiver's six state law claims do not derive from a common nucleus of operative fact such that they form part of the "same case or controversy" under 28 U.S.C. § 1367. ........ 6

IV. The Receiver cannot create jurisdiction simply by claiming that his intent is to accomplish the goals of the receivership order. ........ 8

V. The Receiver lacks Article III standing to bring a damages claim based on future, contingent expenses of litigation (the state law claims are not ripe). ........ 12

VI. The Receiver lacks Article III standing to bring claims belonging to non-receivership entities under the guise that their names are similar to the Receivership Defendants Hedgewick Consulting, LLC and Lit Def Strategies, LLC. ........ 14

VII. The Receiver lacks Article III standing on behalf of Hedgewick Consulting, LLC. ........ 16

VIII. The Receiver has no standing under the Wagoner Rule. ........ 17

IX. The Receiver has no standing to bring the Voidable Transfer Claim. ........ 20

A. The Receiver was not granted authority by the appointing court to bring a voidable transfer action. ........ 21

B. The Receiver lacks standing because he did not plead (nor can he) that the Claimants are creditors of the debtor. ........ 21

X. The Receiver has no standing to assert claims that are not exclusively owned by the receivership estate. ........ 22

XI. Conclusion ........ 25

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006) ........................................ passim

*Am. Fire & Cas. Co. v. Finn*,
341 U.S. 6 (1951) ........................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 66 (2009) ........................................ 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ........................................ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 15

*Brown v. Diversified Maint. Sys.*, LLC,
No. 16-CV-230, 2016 WL 3207712 (W.D.N.Y. June 10, 2016) ........................................ 4

*Caravella v. City of New York*,
79 Fed. Appx. 452 (2d Cir. 2003)(unpublished) ........................................ 14

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013) ........................................ 13

*Cobalt Multifamily Inv'rs I, LLC v. Shapiro*,
857 F. Supp. 2d 419 (S.D.N.Y. 2012) ........................................ 17

*Cobalt Multifamily Inv'rs I, LLC v. Arden*,
46 F. Supp. 3d 357 (S.D.N.Y. 2014) ........................................ 24

*Cobalt Multifamily Invs. I, LLC v. Arden*,
46 F. Supp. 3d 357 (S.D.N.Y. 2014) ........................................ 22

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) ........................................ 13

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) ........................................ 11, 22, 24

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
545 U.S. 546 (2005) ........................................ 5, 9

*Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*,
134 F.4th 73 (2d Cir. 2025) ........................................ 6

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ........................................................................................ 18

*In re Bennett Funding Grp., Inc.*,
336 F.3d 94 (2d Cir. 2003) .......................................................................................... 17

*In re Lehr Constr. Corp.*,
528 B.R. 598 (Bankr. S.D.N.Y. 2015), aff'd, 551 B.R. 732 (S.D.N.Y. 2016),
aff'd, 666 Fed. Appx. 66 (2d Cir. 2016) (unpublished).............................................. 19

*Indus. Energy Consumers of Am. v. FERC*,
125 F.4th 1156 (D.C. Cir. 2025)................................................................................ 13

*Kirschner v. KPMG LLP*,
938 N.E.2d 941 (N.Y. 2010)....................................................................................... 19

*Kirschner v. KPMG, LLP*,
626 F.3d 673 (2d Cir. 2010 ......................................................................................... 18

*Kokkonen v. Guardian Life Ins. Co of America*,
511 U.S. 375 (1994)........................................................................................................ 9

*Lank v. New York Stock Exch.*,
548 F.2d 61 (2d Cir.1977) ........................................................................................... 22

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
211 F.3d 697, 704 (2d Cir. 2000) .................................................................................. 7

*McMullen v. Hoffman*,
174 U.S. 639 (1899)...................................................................................................... 20

*Metro Kitchenworks Sales, LLC v. Contl. Cabinets, LLC*,
820 N.Y.S.2d 79 (N.Y. App. Div. 2d Dept. 2006) ..................................................... 15

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989)........................................................................................................ 9

*Pope v. Louisville, New Albany & Chicago Ry. Co.*,
173 U.S. 573 (1899)........................................................................................................ 8

*Robb Evans & Associates, LLC v. Holibaugh*,
609 F.3d 359 (4th Cir. 2010), *cert. den. sub. nom.*
*Holibaugh v. Robb Evans & Associates, LLC*,
562 U.S. 1137 (2011)...................................................................................................... 5

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)........................................................................................................... 6

*S.E.C. v. Bilzerian*,
378 F.3d 1100 (D.C. Cir. 2004) ........ 8

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995) ........ 22

*Silverman v. Citibank, N.A.*,
No. 1:22-CV-5211-GHW, 2023 WL 7305243 (S.D.N.Y. Nov. 6, 2023) ........ 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ........ 13

*Steel Co. v. Citizens for a Better Env.*,
523 U.S. 83 (1998) ........ 20

*Sutton v. Houllou*,
141 N.Y.S.3d 501(N.Y. App. Div. 2d Dept. 2021) ........ 15

*Thomas v. City of New York*,
143 F.3d 31 (2d Cir. 1998) ........ 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 14

*U.S. v. Franklin Natl. Bank*,
512 F.2d 245 (2d Cir. 1975) ........ 10

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*,
212 B.R. 34 (S.D.N.Y. 1997) ........ 18

*Wiand v. ATC Brokers Ltd.*,
96 F.4th 1303 (11th Cir. 2024) ........ 22

*Wight v. BankAmerica Corp.*,
219 F.3d 79 (2d Cir. 2000) ........ 17

**Statutes and Regulations**

16 C.F.R. § 310 ........ vii, 7

28 U.S.C. § 1332 ........ 3

28 U.S.C. § 1345 ........ 2, 4

28 U.S.C. § 1367 ........ passim

28 U.S.C. § 1367(a) ........ 2, 4, 5

28 U.S.C. § 754 ........ 12

Judicial Improvements Act of 1990, Pub. L. No. 101-517 .......... 4

N.Y. Debt. & Cred. Law §§ 270, *et seq*. .......... 20, 21, 22

**Rules**

Rule 12(b)(6) Fed. R. Civ. P. .......... 18

Rule 19 Fed. R. Civ. P. .......... 4

## ABBREVIATIONS

| | |
|---|---|
| ¶__ | Paragraph of the First Amended Complaint |
| CFPB | Consumer Financial Protection Bureau |
| TSR | Telemarketing Sales Rule (16 C.F.R. § 310) |
| MEC | MEC Distribution, LLC |
| Hedgewick | Hedgewick Consulting, LLC |
| UVTA | Uniform Voidable Transactions Act |
| NY-UVTA | New York's version of the Uniform Voidable Transactions Act, codified at N.Y. Debt. & Cred. Law §§ 270, et seq. |

## DEFINED TERMS

| | |
|---|---|
| Ice Legal | Ice Legal, P.A. and the Individual Defendants |
| Complaint | The First Amended Complaint dated May 22, 2025, unless otherwise indicated. |
| *Main Case* | *Consumer Financial Protection Bureau, et al. v. StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al.*, 1:24-cv-00040-EAW-MJR (W.D.N.Y.) |
| *Main Case* Plaintiffs | Plaintiffs in the *Main Case* |
| *Main Case* Defendants | Defendants in the *Main Case* |
| Claimants or Receiver's Claimants | The entities alleged to be in the receivership estate of the *Main Case* who appear to be bringing claims in this case |
| Engagement Agreement | Exhibit A to the First Amended Complaint (Dkt. 24-1) |

## INTRODUCTION AND BACKGROUND

### I. The Parties

This case arises from an attorney retainer agreement between Ice Legal, P.A. and over one hundred clients, most of whom were other law firms and attorneys.[1] The Plaintiff is Thomas McNamara appointed as the Receiver in a civil action originally brought by the CFPB and certain state Attorneys General[2] (the "*Main Case*") against a group of about 49 entities (the "*Main Case* Defendants"), less than a third of whom were also Ice Legal's clients under the retainer agreement. In this case, the Receiver—on behalf of entities who number somewhere between 3 and 62[3] ("Receiver's Claimants" or "Claimants")—brings six state law claims against Ice Legal and its two attorneys, Thomas Ice and Ariane Ice (the "Individual Defendants," or together with Ice Legal, P.A., "Ice Legal").

### II. The Receiver's third-party claims

The six state-law counts of the Receiver's Complaint are: 1) breach of fiduciary duty; 2) professional negligence (i.e. "malpractice"); 3) rescission [of the fee contract]; 4) voidable transfer; 5) breach of contract; and 6) unjust enrichment. In none of these counts is the Receiver claiming that Ice Legal participated in any wrongdoing of the *Main Case* Defendants. Nor does he claim that Ice Legal's advice was wrong or caused the Receiver's Claimants to violate state and federal laws. Instead, the Receiver is claiming that Ice Legal's advice was absolutely correct yet somehow not "sufficient" to make their clients stop violating some unspecified state and federal laws and regulations (*see e.g.*, ¶¶204, 215).

---

[1] *See*, the contract attached as Exhibit A to the First Amended Complaint, the "Engagement Agreement") (Dkt. 24-1).

[2] *Consumer Financial Protection Bureau, et al. v. StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al.*, 1:24-cv-00040-EAW-MJR (W.D.N.Y.).

[3] *See*, Motion for More Definite Statement filed simultaneously herewith.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### I. Summary of Argument

***No federal question or diversity jurisdiction:*** The Receiver did not plead that this Court has federal question jurisdiction or diversity jurisdiction and did not, nor can he, plead the facts necessary to support a finding that the Court has diversity jurisdiction.

***No jurisdiction under the statutes pled:*** In his Complaint, the Receiver cites to two statutes as the bases of this Court's jurisdiction: 1) 28 U.S.C. § 1345; and 2) 28 U.S.C. § 1367(a) (¶35), neither of which is applicable. Section 1367(a) is not applicable because the six state law claims do not form part of the "same case or controversy" as being litigated in the *Main Case*.

***No jurisdiction based on judge-made rules for receiver-filed cases:*** The Receiver asserts a non-statutory basis for "ancillary jurisdiction" even though the Second Circuit has, in acknowledging that ancillary jurisdiction has been codified into the supplemental jurisdiction statute (§ 1367), required the use of a "common nucleus of operative fact" standard to vintage ancillary jurisdiction concepts.

***The Receiver lacks Article III standing because the damages alleged are not ripe:*** The Receiver alleges that his Claimants' damages include "the costs of defending and participating in the actions brought by the federal and state regulators (including the resulting receivership)" (¶227). Article III standing does not exist because these claims are not ripe.

***The Receiver lacks Article III standing to bring claims belonging to non-receivership entities just because their names are similar to Receivership Entities:*** The Engagement Agreement establishes that, as to Hedgewick Consulting, LLC and Lit Def Strategies, LLC, the Receiver has no standing to bring claims arising from that Agreement because companies by that name did not sign the Agreement and never became clients. These claims (as meritless as they

are) belong to non-receivership entities—the actual signatory corporations, if they exist, or the individual who signed for them, if they do not.

***The Receiver lacks Article III standing to bring the claims of Hedgewick Consulting, LLC because it is not a Receivership Defendant:*** Even if Hedgewick Consulting, LLC were the company that signed the contract, the Receiver's attempt to sweep it into the Preliminary Injunction's ambit by way of simply "identifying" it as a Receivership Entity was without effect. This magic-wand mechanism only applies to non-parties. Hedgewick Consulting, LLC was already a party when the Receiver waved his wand.

***The Receiver has no standing under the Wagoner Rule:*** Because the Receiver's Claimants were complicit in all the purported wrongdoing they allege against Ice Legal, the Receiver has no standing to bring claims of such wrongdoers.

***The Receiver has no standing to bring the Voidable Transfer Claim:*** The order appointing the Receiver does not, unlike many other orders, specifically grant him the authority to pursue Voidable Transfer claims. He also lacks standing because he did not plead that his Claimants are creditors of the "debtor"—i.e. a Receivership Defendant.

* * *

## II. The Complaint does not invoke this Court's federal question or diversity jurisdiction.

The Receiver did not plead that this Court's jurisdiction rests upon either federal question or diversity of citizenship between the parties. If he intended to travel under diversity jurisdiction (28 U.S.C. § 1332), he did not plead the citizenship of any of the real parties in interest on the Plaintiff's side of this case,[4] which would include the citizenship of each of the

[4] In a paragraph outside the "Jurisdiction and Venue" section of the Complaint, the Receiver does mention in passing that "Strategic Family, Inc. and its various subsidiaries…including

members of the limited liability companies whose claims he is bringing. *Brown v. Diversified Maint. Sys.*, LLC, No. 16-CV-230, 2016 WL 3207712, at *2 (W.D.N.Y. June 10, 2016) (collecting cases holding that, for diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members).

Moreover, if the Receiver wished to proceed under a diversity jurisdiction theory, he was required to allege the citizenship of all of Ice Legal's Engagement Agreement clients since they must be named or joined as plaintiffs under Rule 19 Fed. R. Civ. P.

## III. The two statutes pled in the Complaint do not provide this Court with subject matter jurisdiction.

In his Complaint, the Receiver cites to two statutes as the bases of this Court's jurisdiction: 1) 28 U.S.C. § 1345; and 2) 28 U.S.C. § 1367(a) (¶35). The first basis (§ 1345) is not applicable because the Receiver is not an officer of the United States expressly authorized to sue by Act of Congress. To the extent the Receiver is simply identifying the jurisdictional basis of the *Main Case*, the reference is largely irrelevant (but should serve as a reminder that such jurisdiction relies entirely on the CFPB's presence in the case—a presence that is now illusory[5]).

The second basis (supplemental jurisdiction under 28 U.S.C. § 1367.[6]) is not applicable because: 1) by its terms, the statute applies only to claims in the same case, not those in separate

Strategic itself…are domiciled in New York, headquartered in New York, and maintain their business operations in New York" (¶77). The Receiver says nothing about Strategic Family, Inc.'s place of incorporation.

[5] If the State AGs do not have the same power to seek the extraordinary remedies ordered in the *Main Case*, the Preliminary Injunction in that case should be amended. As a result, the Receiver's authority in this case may well evaporate.

[6] Judicial Improvements Act of 1990, Pub. L. No. 101-517.

proceedings; and 2) the six state law claims do not form part of the "same case of controversy" as being litigated in the *Main Case*.

**A. The Court cannot exercise its supplemental jurisdiction because it has no original jurisdiction over any claim in this case.**

The plain wording of the supplemental jurisdiction statute requires that the Receiver plead and prove that his six state law claims are part of the same case or controversy as a claim in this case over which the Court has original jurisdiction:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added).

Thus, on its face, § 1367 does not provide "supplemental" jurisdiction here, as that statute only allows jurisdiction to extend in the narrow circumstances where there is already a basis for original jurisdiction over a claim in that case. *See*, *e.g.*, *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 554 (2005) ("In order for a federal court to invoke supplemental jurisdiction…, it must first have original jurisdiction over at least one claim in the action"); *Robb Evans & Associates, LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010), *cert. den. sub. nom. Holibaugh v. Robb Evans & Associates, LLC*, 562 U.S. 1137 (2011) (specifically carving out § 1367 as a basis for its jurisdiction over a receiver's third-party claims because that statute applies only to related claims in a single action rather than related proceedings; the court instead applied judge-made "ancillary" jurisdiction).

**B. The Receiver's six state law claims do not derive from a common nucleus of operative fact such that they form part of the "same case or controversy" under 28 U.S.C. § 1367.**

While preserving for appellate review this "claims v. proceedings" issue discussed above, Ice Legal acknowledges that, for now, this Court is constrained to follow the precedent of the Second Circuit, which has never been troubled by the textual limitation of the supplemental jurisdiction statute to claims in the same case:

> As a threshold matter, we recognize that some district courts have refused to rely on the existence of subject matter jurisdiction in one action to provide supplemental jurisdiction over claims in a related action…. This distinction, however, has never troubled us. *See, e.g., Alderman v. Pan Am World Airways,* 169 F.3d 99, 101–02 (2d Cir. 1999) (supplemental jurisdiction over contract dispute based on jurisdiction over settled wrongful death action).

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal citations omitted).

When determining whether two cases are "so related…that they form part of the same case or controversy," the Second Circuit uses the standard that pre-dates § 1367—the "common nucleus of operative fact" test:

> Turning to the terms of the statute, we have held that disputes are part of the "same case or controversy" within § 1367 when they "derive from a common nucleus of operative fact." … The "common nucleus" standard hails originally from *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a pre- § 1367 case addressing pendent jurisdiction. When both pendent and ancillary jurisdiction were codified in 1990 as § 1367, however, the "common nucleus" test was retained by nearly all the Circuits to interpret the statute's "case or controversy" language.

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d at 335 (internal citations omitted). *See also Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 79 (2d Cir. 2025) ("[t]he federal court has supplemental jurisdiction over state-law claims sharing a common nucleus of operative fact with the federal-law ones.") (*quoting Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025).

When analyzing whether two disputes arise from a "common nucleus of operative fact," the Second Circuit has traditionally asked whether: 1) the facts underlying the federal and state claims substantially overlap; or 2) the presentation of the federal claim will necessarily bring the facts underlying the state claim before the court. *Achtman*, at 335, *quoting Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

**1. The facts in the *Main Case* and this case do not substantially overlap.**

The federal question claim against the *Main Case* Defendants—and the basis for the order appointing the Receiver—is that the *Main Case* Defendants failed to comply with the Telemarketing Sales Rule ("TSR"). Specifically, in the *Main Case*, the plaintiffs claimed that the defendants' procedures for signing up clients did not meet the requirements of the face-to-face meeting exception to the prohibition of taking advance fees. Despite representations to the Court otherwise in the Receiver's Civil Cover Sheet (Dkt. 104), nowhere in the Receiver's Complaint against Ice Legal does he mention "telemarking," the "TSR," "face-to-face" meetings, or any of the statutes he says he is filing under (15 U.S.C. 6102(c), 6105(d), 16 C.F.R., pt. 310, 12 U.S.C. 5536(a), 5564 and 5565) as a basis for his claims.

There is only one superficial (and contingent) connection between this case and the *Main Case*: the Receiver's allegation that his Claimants' damages could include "the costs of defending and participating in the actions brought by the federal and state regulators (including the resulting receivership)" (¶227) Not only are such litigation expenses uncertain and unripe, they will not be <u>adjudicated</u> during the course of the *Main Case*. Because the proof of the Claimants' costs to defend the enforcement action does not overlap any facts at issue in that enforcement action, they do not arise from a "common nucleus of operative fact."

In short, there is no overlap, substantial or otherwise, between the facts and allegations of the *Main Case* and those of the Receiver's six state law claims against Ice Legal.

**2. The presentation of the federal claim in the *Main Case* will not necessarily bring the facts underlying the state claim before the Court.**

The second test for common nucleus of operative fact is whether the presentation of the federal claim necessarily brought the facts underlying the state claim before the court. *Achtman*, at 335. Again, the presentation of the claims in the *Main Case* (that the face-to-face meetings were not sufficient to satisfy the TSR) does not depend on, or govern, the determination of any of the facts pled in the six (predominantly malpractice) claims against Ice Legal.

Accordingly, the case should be dismissed for lack of subject matter jurisdiction under the supplemental jurisdiction statute.

## IV. The Receiver cannot create jurisdiction simply by claiming that his intent is to accomplish the goals of the receivership order.

Next, the Receiver cites *S.E.C. v. Bilzerian*, 378 F.3d 1100, 1107 (D.C. Cir. 2004) for the proposition that the Court has "ancillary" jurisdiction over any case he decides to bring whenever he claims that his purpose in doing so is to accomplish the objectives of the receivership order (¶35). While *Bilzerian's* holding was about venue, not subject matter jurisdiction, the fact remains that a common law concept of ancillary jurisdiction for receiver-filed cases has stitched its way through a myriad of cases starting as far back as the oft-cited, 1899-case of *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573, 577 (1899). But the Court should reject the Receiver's invitation to further adulterate the law of federal jurisdiction by applying this common law concept in an area exclusively controlled by statute.

***First***, it should be self-evident that nothing in the Constitution or any statute confers upon one person, even a receiver, the extraordinary power of independently extending a federal court's jurisdiction to a separate proceeding by simply declaring that his intention is to acquire an asset

for the estate. This is because the receiver is but an agent of the court and the court itself has no power to extend its own jurisdiction to other proceedings by judicial fiat.

***Second***, this special jurisdiction for receiver-filed cases is judge-made law with no statutory basis. It is now "bedrock principle" that "the federal courts have no jurisdiction without statutory authorization." *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 553 (2005). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. "Congress, and not the Judiciary, defines the scope of federal jurisdiction…" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17 (1951) (superseded by statute on other grounds) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation…"). It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co of America*, 511 U.S. 375, 377 (1994) (citations omitted).

Many cases that still apply "ancillary" jurisdiction to automatically imbue a receiver-filed case with subject matter jurisdiction either precede or ignore the Supreme Court's clarification in 2005 that judge-made doctrines of "ancillary" and "pendent" jurisdiction doctrines did not survive the legislature's passage of § 1367. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005) (*see*, Ginsburg's dissent stating that the majority's reading of § 1367 "discard[s] entirely…the judicially developed doctrines of pendent and ancillary jurisdiction…"). Even, the Second Circuit case of *Achtman* recognized that ancillary and pendant jurisdiction were codified into § 1367 and that these antiquated jurisdictional extensions would now be treated under the "new rubric" of § 1367 supplemental jurisdiction. *Achtman*, at 336. In that

case, which arose from a separately filed malpractice case against plaintiffs' lawyers in a securities class action, the Second Circuit found—after applying the "common nucleus of operative fact" test—that supplemental jurisdiction existed under § 1367. *Id*. at 335-336.

While the former receiver-based ancillary jurisdiction was never explicitly based on a common nucleus of operative fact between the receiver's case and the case that appointed the receiver, the Second Circuit's approach admits of only two interpretations. It either grafts a "common nucleus of operative fact" test onto receiver-based ancillary jurisdiction or disposes of such ancillary jurisdiction entirely because it was "codified" (as in, subsumed) into "supplemental jurisdiction" under § 1367. Either of these paths for applying the Second Circuit's approach to § 1367 lead to the same standard—the Receiver must show a common nucleus of operative fact.

Importantly, this ancillary jurisdiction for receiver-filed cases has always been a narrow exception. It does not, for example, create jurisdiction for any court other than the one that entered the appointment order. *U.S. v. Franklin Natl. Bank*, 512 F.2d 245, 250 (2d Cir. 1975) ("This ground of jurisdiction … manifestly does not exist where the receiver sues in a jurisdiction other than that of his appointment."). Moreover, it is the rare case (such as this one) where the receiver could not easily meet the "common nucleus of operative fact" test. And in such rare cases, a receiver could still bring an independent action in another district court (if diversity jurisdiction exists) or state court. Accordingly, applying § 1367 in the manner approved by the Second Circuit would not wreak havoc on the traditional—but statutorily unsupported—methodology which, until the passage of § 1367, effectively granted special (but unnecessary) jurisdictional privileges to receivers.

To summarize, the Receiver's intent (to accomplish the ends sought with the appointment order) is irrelevant to establishing jurisdiction. The Receiver must meet the § 1367 "same case or controversy" rule (i.e. the "common nucleus of operative fact" test). Here, the Receiver's state law claims do not arise from a common nucleus of operative fact as in the *Main Case*.

***Third***, even if the passage of § 1367 had no effect on pre-existing judge-made ancillary jurisdiction (such that the Receiver need only show an intent to accomplish the ends sought by the appointment order), the Receiver has not made the requisite showing of intent here.

The primary goal of the Preliminary Injunction and the appointment of the Receiver is to maintain the status quo,[7] not to liquidate assets on the naked assumption that the *Main Case* Defendants will be required to pay fines or restitution.[8] Similarly, the Preliminary Injunction only authorizes the Receiver to institute proceedings "to preserve or recover" (not liquidate) receivership "Assets." An "Asset" is defined as an interest in property owned or controlled by, or held for the benefit of, a Defendant or Relief Defendant.[9] Assuming *arguendo* that the small portion of the choses in action at stake in this litigation are the sort of tangible property the Preliminary Injunction was intended to protect, this action does not "preserve or recover" a receivership "[a]sset" or maintain the status quo.

---

[7] Decision and Order, dated March 4, 2024, *Main Case* (Dkt. 183) (emphasis added):

> [T]he Court concludes that an asset freeze as to defendants and relief defendants is necessary to preserve the status quo and the possibility of effective final relief for consumers. … A receiver is "particularly necessary" where "it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste."

[8] The Second Circuit has expressed strong reservations as to the propriety of allowing a receiver to liquidate an estate. *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008). The Preliminary injunction did not authorize the Receiver to liquidate this or any other chose in action.

[9] Preliminary Injunction, dated March 4, 2024, *Main Case* (Dkt. 184), pp. 4, 20-21.

Moreover, as pointed out in the first incarnation of this motion, the Receiver failed to file the notices required by 28 U.S.C. § 754 in order to establish subject matter jurisdiction under that statute. Since failure to file the notices "shall divest the receiver of jurisdiction and control over all such property in that district," he cannot claim to be recovering that property in this case.

Importantly, the Receiver had already preserved his Claimants' portion of the choses in action (and the status quo) when he entered into the Tolling Agreement with Ice Legal (¶208). The appointment order did not authorize him to proceed with filing a lawsuit (i.e. to liquidate the claim) once he had preserved the action against the (further) running of statutes of limitations.[10] Thus, these proceedings are not intended to accomplish the ends sought by the Preliminary Injunction and, as a result, the Court has no jurisdiction even under judge-made ancillary jurisdiction mentioned in the Complaint.

## V. The Receiver lacks Article III standing to bring a damages claim based on future, contingent expenses of litigation (the state law claims are not ripe).

As pointed out above, there is only one superficial (and contingent) connection between this case and the *Main Case*—the Receiver's allegation in Count 2 (Professional Negligence) that his Claimants' damages would include "the costs of defending and participating in the actions brought by the federal and state regulators (including the resulting receivership)" (¶227). Because these possible future damages are too speculative and unripe, the Receiver has no Article III standing to have this Court entertain the claim.

Article III standing requires an "injury in fact" which, in turn, requires a showing of an invasion of a legally protected interest that is "imminent" and not conjectural or hypothetical.

[10] The Receiver's bizarre unilateral termination of the tolling agreement (¶209) was actually an abrogation of his duties under the Preliminary Injunction.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016). The threatened injury must be "certainly impending" and "a highly attenuated chain of possibilities" does not satisfy the rule. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013). As a result, claimed future harm triggers both a ripeness and Article III standing inquiry:

> First, ripeness and standing focus on two different issues: ripeness asks whether the suit is brought at a proper time and standing asks whether the named plaintiff is a proper party to sue. …But if the plaintiff's claim depends on a threatened future injury, the two ask a combined question: is the plaintiff's asserted injury too speculative? If so, the plaintiff lacks standing because his feared injury is not "imminent…"

*Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1164 (D.C. Cir. 2025) (concurring opinion of J. Henderson) (emphasis added). *See also Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) ("Moreover, an Article III court cannot entertain a claim which is based upon contingent future events that may not occur as anticipated or indeed may not occur at all. Thus, when resolution of an issue turns on whether there are nebulous future events so contingent … that there is no certainty they will ever occur, the case is not ripe for adjudication.") (cleaned up).

Accordingly, the fact that the enforcement action in the *Main Case* is not at, or even near, its conclusion means that the claim in this case for the defense costs that may, in the future, be incurred in the *Main Case* is too speculative to provide the Receiver with Article III standing. *Cf. D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018) ("Our Circuit has consistently ruled in the RICO context that claims for "lost debt" injuries—that is, for damages in the form of an owed, but as-yet-uncollected, amount—are unripe when parallel proceedings to collect the amount owed are ongoing in another forum.").

Accordingly, the damages claim should be dismissed for lack of Article III standing and lack of ripeness.

**VI. The Receiver lacks Article III standing to bring claims belonging to non-receivership entities under the guise that their names are similar to the Receivership Defendants Hedgewick Consulting, LLC and Lit Def Strategies, LLC.**

The Receiver asserts that two of his Claimants are Hedgewick Consulting, LLC ("Hedgewick") and Lit Def Strategies, LLC ("Lit Def") which he claims are signatories to the Engagement Agreement. (¶30) In reality, the signatories (and the companies referenced throughout) were Hedgewick, LLC and Litigation Defense Strategies, LLC.[11] The Receiver has pled no reason for this difference in names and simply claims that his Claimant, Hedgewick Consulting, LLC, "signed as Hedgewick, LLC." But it is Jason Blust who signed on behalf of "Hedgewick, LLC" (and "Litigation Defense Strategies, LLC").


**HEDGEWICK, LLC**
(on behalf of itself and the law firms which receive its services)

By: ____
Name: Jason Blust
Title: Manager

**LITIGATION DEFENSE STRATEGIES, LLC**
(on behalf of itself and the law firms which receive its services)

By: ____
Name: Jason Blust
Title: Manager



Accordingly, the Receiver has no Article III standing because there is no case or controversy. There is no injury in fact to Hedgewick Consulting, LLC and Lit Def Strategies, LLC because, on the face of the Engagement Agreement, they are not signatories and are not clients of Ice Legal. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 430 (2021); *Caravella v. City of New York*, 79 Fed. Appx. 452, 453 (2d Cir. 2003)(unpublished) (a stranger to the agreement has no standing to bring a contract claim).

Moreover, the claims would belong to non-receivership entities. If these two companies are real (*de jure*) entities, then they are outside the receivership estate. If these entities never

[11] Engagement Agreement, pp. 6, 7.

existed, then they cannot bring claims in this Court. Instead, it would be Jason Blust, as someone who executed a contract on behalf of nonexistent principals, who can sue or be sued for claims arising out of that contract. *Metro Kitchenworks Sales, LLC v. Contl. Cabinets, LLC*, 820 N.Y.S.2d 79 (N.Y. App. Div. 2d Dept. 2006) ("[U]nder well-settled principles of agency law, the contract generally remains valid and enforceable as between the third party and the individual[] who executed the contract on behalf of the nonexistent principal."); *Sutton v. Houllou*, 141 N.Y.S.3d 501, 503 (N.Y. App. Div. 2d Dept. 2021) (same). Therefore, the Receiver would have no standing to bring claims on their behalf.

Nor can he bring claims on behalf of the Receivership Defendants, Hedgewick Consulting, LLC and Lit Def Strategies, LLC, merely because their names are similar to that of the actual signatories. A glance at the caption of this case will establish that these proceedings are rife with similar-looking corporate names. The Receiver's conclusory assumption that Blust meant to sign for receivership entities has no legal effect and, in any event, is insufficient under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, because the Receiver stepped into the shoes of the drafters of the Engagement Agreement, any irregularities of that contract must be construed against the Receiver.

Accordingly, the Engagement Agreement establishes that, as to Hedgewick Consulting, LLC and Lit Def Strategies, LLC, the Receiver has no standing to bring the claims described in the First Amended Complaint because companies by that name did not sign the Agreement and never became clients. These claims (as meritless as they are) belong to non-receivership entities—the actual signatory corporations, if they exist, or the individual who signed for them, if they do not.

The claims should be dismissed for lack of standing.

## VII. The Receiver lacks Article III standing on behalf of Hedgewick Consulting, LLC.

As to whether it is a Receivership Defendant, the records in the *Main Case* conclusively show that Hedgewick Consulting, LLC ("Hedgewick") is not—and as a result, cannot be a Claimant in this case. ***First***, Hedgewick was not a defendant when the Court issued the Preliminary Injunction on March 4, 2024.[12] Hedgewick did not become a *Main Case* Defendant until the filing of the Second Amended Complaint on May 28, 2024.[13] ***Second***, the *Main Case* Plaintiffs' motion to bring Hedgewick within the ambit of the Preliminary Injunction[14] is still pending.

The Receiver's claim that Hedgewick is a Receivership Defendant, however, is based on the fact that he "identified" Hedgewick as such on August 16, 2024 (¶28). The Receiver is apparently referring to a controversial passage in the Preliminary Injunction that the Receiver believes gives him *carte blanche* to bring companies under the dominion of the existing Preliminary Injunction simply by identifying them:

> If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court.[15]

The force and effect of this passage is unsettled because this mechanism—which subjects a party to a preliminary injunction without the normal due process protections required for such

---

[12] *Main Case*: Preliminary Injunction, filed March 4, 2024 (Dkt. 184) ("Preliminary Injunctions").

[13] *Main Case*: Second Amended Complaint for Injunctive Relief, Restitution, and Civil Money Penalties, Filed May 28, 2024 (Dkt. 366).

[14] *Main Case*: Notice of Plaintiffs' Motion for a Preliminary Injunction Against Fidelis Legal Support Services, LLC, Cameron Christo, the Bush Lake Trust, Michelle Gallagher, Richard K. Gustafson II, Timothy F. Burnette, and Hedgewick Consulting, LLC, filed November 1, 2024 (Dkt. 477).

[15] Preliminary Injunction, IX.S (p. 21).

orders—is on appeal before the Second Circuit.[16] Leaving that aside, the Receiver's claim is patently frivolous because Hedgewick was not a nonparty when he identified it as a so-called Receivership "Entity" on August 16th. It had been made a party over two months earlier, and as a result, the controversial passage is not even applicable.

Accordingly, because Hedgewick is not within the receivership estate, the Receiver has no standing to bring its claims. Its claims should be dismissed.

## VIII. The Receiver has no standing under the Wagoner Rule.

In the context of bankruptcy, the Second Circuit announced the rule that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). This rule, now known as the *Wagoner* rule, applies equally to successors to wrongdoers, <u>including receivers</u>, who stand in the shoes of the receivership entities. *Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 423 (S.D.N.Y. 2012).

"The rationale underlying the Wagoner rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation. Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the Wagoner rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86–87 (2d Cir. 2000) (citations and quotations omitted).

The Second Circuit treats the *Wagoner* rule as a standing rule. *See e.g., id.*; *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 97 (2d Cir. 2003). *See also Hirsch v. Arthur Andersen & Co.*,

[16] *Main Case*: Notice of Appeal, dated May, 23, 2025 (Dkt. 695); Notice of Appeal, dated May 23, 2025 (Dkt. 696); Notice of Appeal, dated May 29, 2025 (Dkt. 698).

72 F.3d 1085 (2d Cir. 1995) (affirming dismissal under Rule 12(b)(1)); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 212 B.R. 34, 35 (S.D.N.Y. 1997) (granting motion to dismiss under Rule 12(b)(1)); *Kirschner v. KPMG, LLP*, 626 F.3d 673 (2d Cir. 2010).[17]

Here, Ice Legal flatly denies that its availability retainer was wrongful in any respect, even under the Receiver's creative interpretations of fact. But, if it is assumed *arguendo* that the Receiver's assertions are true, the Receiver's claims must be dismissed because, by his own allegations, his Claimants instigated and participated in all the purported "wrongdoing":

- *the Claimants—through their counsel—proposed the arrangement to Ice Legal* (¶¶3, 49, 63; 243 (the engagement was "an express request by representatives of Strategic"; the restriction on future business was "proposed by Strategic"); ¶3 of original Complaint ("[T]he Strategic Parties began discussions with Defendants about…having Defendants represent the Strategic Parties"));
- *the Claimants—through Strategic's General Counsel—proposed the fee structure* (¶ 105);
- *the Claimants—through their counsel—negotiated with Ice Legal regarding the amount of the retainer* (¶¶64-71);
- *the Claimants—through counsel for Strategic—proposed the termination provisions* (¶126) which was unlawful (¶11.c.);
- *the Claimant (Strategic) drafted the Engagement Agreement* (¶¶103-104);

[17] But the same "unclean hands" concept may be analyzed under Rule 12(b)(6) Fed. R. Civ. P. as an application of the *in pari delicto* doctrine. *See*, discussion in *Silverman v. Citibank, N.A.*, No. 1:22-CV-5211-GHW, 2023 WL 7305243, at *7, n. 5 (S.D.N.Y. Nov. 6, 2023).

- *the Claimants' objective for the agreement was "to buy off Ice Legal so it would stop bringing lawsuits."* (¶64; ¶ 58 of original Complaint ("The Strategic Parties primarily intended to use this arrangement as a way to buy off [Ice Legal]"));
- *the purpose of including an "amorphous web of clients" was to "buy peace from Ice Legal and conflict it out of being adverse to as broad a group as possible."* (¶ 241);
- *the agreement [drafted by the Claimants] "was purposely structured as a way to evade the restrictions of ABA Model Rule 5.6…" which prohibits a restriction on the lawyer's right to practice law as part of a settlement* (¶242);
- *the agreement [drafted by the Claimants] had an "ill-defined scope" as to the entities that were clients* (¶¶11.d., 29); and
- *most importantly, that Ice Legal's services were to be provided "as directed by the Client" (Engagement Agreement, p. 9) meaning that the Claimants controlled how much work would be performed under the availability retainer. Claimants cannot be heard to now complain about the performance of "little or no work," when they themselves chose how much work Ice Legal would perform.*[18]

In the context of the nearly identical *in pari delicto* doctrine, the New York courts have said that "[T]he principle that a wrongdoer should not profit from his own misconduct is so strong in New York…the defense applies even in difficult cases and should not be weakened by exceptions." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010) (internal quotes omitted), *quoted by In re Lehr Constr. Corp.*, 528 B.R. 598, 608 (Bankr. S.D.N.Y. 2015), aff'd, 551 B.R. 732 (S.D.N.Y. 2016), aff'd, 666 Fed. Appx. 66 (2d Cir. 2016) (unpublished).

[18] In fact, Ice Legal was fraudulently induced into the contract by promises that they would be heavily involved in advising and implementing changes to the debt settlement model for the benefit of consumers.

"The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (footnotes omitted); *McMullen v. Hoffman*, 174 U.S. 639, 669–670 (1899) ("To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum.")

This policy of refusing to entertain lawsuits between "wrongdoers" does not change just because Defendants are attorneys. As shown above, the Claimants' participation in the alleged wrongdoing was also through attorneys. No public policy is advanced by punishing the attorneys on one side of a purportedly illegal contract while rewarding those on the other side.

Accordingly, the Court should dismiss the case on the grounds that the Receiver has no standing under the *Wagoner* rule.

## IX. The Receiver has no standing to bring the Voidable Transfer Claim.

The fourth count of the Complaint seeks to allege a claim under the Uniform Voidable Transactions Act ("UVTA"), codified at N.Y. Debt. & Cred. Law §§ 270, *et seq*. (the "NY-UVTA") (¶ 247). Ice Legal does not concede the applicability of New York statutory law to this case but points out that, even if it did apply: 1) the court in the *Main Case* did not authorize the Receiver to bring such a claim; and 2) the Receiver does not allege that his Claimants are creditors under the UVTA. This lack of standing is a threshold jurisdictional matter. *Steel Co. v. Citizens for a Better Env*., 523 U.S. 83, 102 (1998).

**A. The Receiver was not granted authority by the appointing court to bring a voidable transfer action.**

Among the seven most recent McNamara-receivership cases that he has catalogued on his website, this case is the only one in which the words "including but not limited to, actions challenging fraudulent or voidable transfers" do not appear in the order appointing the receiver. Accordingly, courts wishing to grant a receiver the authority to bring voidable transfer actions, explicitly say so. This additional authority is necessary because the funds sought by a voidable transfer action are not "assets" as defined by such preliminary injunction orders—i.e. they are not "property [already] owned or controlled by" receivership entities.[19] Here, the court in the *Main Case* has not granted Mr. McNamara that additional authority.

**Exemplar of other orders appointing Mr. McNamara as Receiver.**


M. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including, but not limited to, actions challenging fraudulent or voidable transfers;


**B. The Receiver lacks standing because he did not plead (nor can he) that the Claimants are creditors of the debtor.**

The NY-UVTA applies to "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor…" (emphasis added). Because the Claimants are not creditors, the Receiver cannot invoke the NY-UTVA. Stated differently, the Receiver has no standing to bring claims on behalf of third-party beneficiaries of the receivership: A receiver generally "'stands in the shoes of the corporation and can assert only those claims which the corporation could have

---

[19] *See*, Preliminary Injunction, definition of "Asset," p. 3.

asserted.'" *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (quoting *Lank v. New York Stock Exch*., 548 F.2d 61, 67 (2d Cir.1977)). The Receiver cannot bring claims belonging to creditors just because his work conserving assets may eventually benefit them. *See Cobalt Multifamily Invs. I, LLC v. Arden*, 46 F. Supp. 3d 357, 361 (S.D.N.Y. 2014) (despite the admirable goal of obtaining money to compensate investors, the Receiver cannot assert claims belonging to those outside the receivership simply because he was appointed for their benefit).

Nor has the Receiver pled that his claims fit within exceptions espoused in other Circuits. For example, he did not plead that his Claimants were "evil zombies" that he freed from the coercion of individual wrongdoers so as to trigger the exception for Ponzi scheme cases such as *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) and its progeny. Nor has he pled that his Claimants were "separate and distinct" from the business model being denounced by the CFPB. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024). Given that this point was raised word-for-word in Ice Legal's pre-answer motions and that the Receiver changed nothing, it may be presumed that he cannot plead these exceptions because they are not applicable.

In short, the NY-UVTA claim should be dismissed because the Receiver has not alleged any facts that would give him standing.

## X. The Receiver has no standing to assert claims that are not exclusively owned by the receivership estate.

The Receiver admits in the Complaint that the clients under the Engagement Agreement included many entities outside the receivership estate. In fact, more clients are outside the receivership estate than in. (¶¶80-85, 87-88, 90). He even claims that the Engagement Agreement covers "hundreds, if not thousands, of unnamed 'clients'" (¶¶8, 78, 92, 240, 243).

Whether or not there were thousands, according to the Receiver, only eighteen of them are in the receivership estate (¶30).

He alleges that all these clients—not just his Claimants—were harmed by Ice Legal. (¶¶147-149). And he specifically asserts that he "is only bringing claims and seeking to recover for the harm caused to Receivership Defendants" (¶228). The Complaint itself, therefore, establishes that the vast majority of entities that he claims were harmed by the purported "illegal" contract and Ice Legal's good, but purportedly "insufficient" advice are outside the receivership estate. The Receiver, therefore, is undeniably trying to bring claims that only partially belong to his Claimants.

The Receiver also alleges that "clients, including Strategic, Lit Def, and Hedgewick" paid Ice Legal" (¶¶263; see also, 253, 265)—i.e. that clients other than his Claimants also footed the bill. And in a stunning display of sheer guesswork, the Receiver states in Paragraph 39 that "[a]ll, or <u>nearly all</u>, of Ice Legal's fees during the representation were paid by Strategic, Lit Def, <u>or</u> Hedg[e]wick, directly <u>or indirectly</u>" (emphasis added). This single sentence concedes: 1) the Receiver's Claimants may not have paid "all" the fees; 2) whatever was paid may have been paid "indirectly" (whatever that may mean); and 3) that either Strategic, Lit Def "or" Hedgewick paid the fees (such that the other two Claimants would presumably have no claim for the return of fees).[20] Despite these admissions, the Receiver demands that all the payments be "returned" to his Claimants alone—that those who shared in making the payments should be ignored.

---

[20] In the Prayer for Relief, the Receiver pleads with similar vagueness that he "understands" that the amount of $2,625,000 [the entire amount paid to date] was paid by Strategic, Lit Def, and/or Hedgewick. (¶2 of Prayer for Relief). The Receiver's use of "and/or" unmistakably communicates that, even among these three entities, the Receiver is unsure as to who made payments. The failure to identify the payor is fatal to the Receiver's claims since one of these three entities was not a client and another was neither a client nor a receivership entity.

This attempt to bring causes of action that are shared by non-receivership entities is nowhere more apparent than with the nonparty, MEC Distribution, LLC ("MEC"). In the Complaint, the Receiver mentions MEC over thirty times and claims that:

- MEC had unresolved conflicts with other Ice Legal clients (¶¶96, 145, 149);
- Ice Legal never communicated with MEC (¶¶97, 141, 143-144, 149-151, 154);
- Ice Legal failed to undertake measures to protect MEC from harm (¶¶147-149, 226);
- Ice Legal owed fiduciary obligations to MEC (¶216); and
- Ice Legal failed to provide MEC with legal advice sufficient to comply with consumer-oriented state and federal laws (¶222-223).

Once again, the Receiver confirmed that he "is not bringing any claims that seek[] to recover for harm caused to MEC" (¶34). Thus, assuming *arguendo* that the Receiver's claims are not frivolous, MEC and all the ("thousands" of) other clients would have an equal right to bring these same claims, and more importantly, to share in any resulting damages awarded and to be reimbursed for any portion of the retainer fee payments which were paid by them or on their behalf.

It is rudimentary that a receiver can only bring claims belonging to his Claimants. *Eberhard v. Marcu*, 530 F.3d at 132; *Cobalt Multifamily Inv'rs I, LLC v. Arden*, 46 F. Supp. 3d 357, 361 (S.D.N.Y. 2014). Given this bright line between claims receivers can bring and those they cannot, it follows that they cannot bring claims that do not <u>exclusively</u> belong to the receivership entities. If, as here, the claims belong, in part, to non-receivership entities, the Court will be unable to adjudicate any of the Receiver's claims without impinging on the rights of non-receivership entities.

The Court may reach the same conclusion by finding that, despite the Receiver's express assertions to the contrary in the Complaint, the fact that he is seeking to recover all of the fee payments—payments that he admits were made, in whole or in part, by non-receivership entities—means that he is, in fact, attempting to bring claims belonging to entities outside the receivership (without distributing the proceeds, if any, to them).

Accordingly, the Court should dismiss because the Receiver has no standing to bring claims on choses in action that the receivership estate shares with non-receivership entities.

## XI. Conclusion

Ice Legal therefore requests that an order be entered dismissing this case for lack of subject matter jurisdiction.

Dated: June 4, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorneys for Defendants,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*