UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al., | Case No. 1:25-cv-00275-EAW-MJR |
| Plaintiff, | |
| vs. | |
| ICE LEGAL, P.A., a Florida Profit Corporation, THOMAS ICE, an individual, and ARIANE ICE, an individual, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**Lundergan Legal, LLC**
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email: amanda@lunderganlegal.com

*Attorney for Defendants,
Ice Legal, P.A., Thomas Ice and
Ariane Ice*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| ABBREVIATIONS | iv |
| DEFINED TERMS | iv |
| INTRODUCTION | 1 |
| I. The Court has no ancillary jurisdiction over this case. | 1 |
|     A. The Receiver has abandoned all but one of the jurisdictional theories stated or implied in the Complaint. | 1 |
|     B. The Receiver did not argue how this case meets the "common nucleus of operative fact test required for "ancillary" (now "supplemental") jurisdiction. | 2 |
| II. The Receiver's claims arising from his Claimant's costs defending the *Main Case* are not ripe. | 4 |
| III. The Receiver lacks Article III standing to bring claims belonging to non-receivership entities under the guise that their names are similar to the Receivership Defendants Hedgewick Consulting, LLC and Lit Def Strategies, LLC. | 5 |
| IV. The Receiver lacks Article III standing on behalf of Hedgewick Consulting, LLC. | 6 |
| V. The *Wagoner* Rule bars the Receiver's claims. | 7 |
| VI. The Receiver has no standing to bring the Voidable Transfer Claim | 9 |
| VII. The Receiver lacks standing because he did not plead (nor can he) that the Claimants are creditors of the debtor. | 10 |
| VIII. Conclusion | 10 |

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
   464 F.3d 328 (2d Cir. 2006) .................................................................................................. 2

*Baliga v. Link Mot., Inc.*,
   2022 WL 6091994 (S.D.N.Y. 2022) ....................................................................................... 2

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir. 1985) .................................................................................................... 7

*City of Chicago v. International College of Surgeons*,
   522 U.S. 156 (1997) ................................................................................................................ 3

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
   545 U.S. 546 (2005) ................................................................................................................ 2

*In re Cybergenics Corp.*,
   226 F.3d 237 (3d Cir. 2000) .................................................................................................. 10

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ................................................................................................................ 2

*Matter of Cooperman*,
   83 N.Y.2d 465, 633 N.E.2d 1069 (1994) ............................................................................... 9

*S.E.C. v. Bilzerian*,
   378 F.3d 1100 (D.C. Cir. 2004) .............................................................................................. 1

*Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
   88 F.4th 103 (2d Cir. 2023) ................................................................................................ 4, 5

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991) .................................................................................................... 9

*Village of West Hampton Dunes v. New York*,
   89 F.Supp.3d 433 (E.D.N.Y., 2015) ....................................................................................... 3

**Statutes and Regulations**

16 C.F.R. § 310 ............................................................................................................................ iv

28 U.S.C. § 1345 ........................................................................................................................... 1

28 U.S.C. § 1367 ........................................................................................................................... 2

28 U.S.C. § 1367(a) ................................................................................................................... 1, 4

N.Y. Debt. & Cred. Law § 273 ................................................................................................ 10

**Other Authorities**

Article III of the United States Constitution ..................................................................... 4, 5, 6

## ABBREVIATIONS

| | |
|---|---|
| ¶__ | Paragraph of the First Amended Complaint |
| CFPB | Consumer Financial Protection Bureau |
| TSR | Telemarketing Sales Rule (16 C.F.R. § 310) |
| MEC | MEC Distribution, LLC |
| UVTA | Uniform Voidable Transactions Act |
| NY-UVTA | New York's version of the Uniform Voidable Transactions Act, codified at N.Y. Debt. & Cred. Law §§ 270, et seq. |

## DEFINED TERMS

| | |
|---|---|
| Ice Firm or Firm | Ice Legal, P.A. |
| Ice Legal | Ice Legal, P.A. and the Individual Defendants |
| Complaint | The First Amended Complaint dated May 22, 2025 (Dkt. 24), unless otherwise indicated. |
| *Main Case* | *Consumer Financial Protection Bureau, et al. v. StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al.*, 1:24-cv-00040-EAW-MJR (W.D.N.Y.) |
| *Main Case* Plaintiffs | Plaintiffs in the *Main Case* |
| *Main Case* Defendants | Defendants in the *Main Case* |
| Claimants or Receiver's Claimants | The entities alleged to be in the receivership estate of the *Main Case* who appear to be bringing claims in this case |

| | |
|---|---|
| Engagement Agreement | Exhibit A to the First Amended Complaint (Dkt. 24-1) |
| Ds' Memo | Memorandum in Support of Motion to Dismiss For Lack of Subject Matter Jurisdiction (Dkt. 31-1) |
| Receiver's Opposition or Opp. | Receiver's Opposition to Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction (Dkt. 37) |
| Joined Rule 12 Motions | Joined Rule 12 Motions: Motion for More Definite Statement; Motions to Dismiss for Failure to Join a Party, Lack of Personal Jurisdiction and Insufficient Process and Service of Process; Motions to Dismiss on the Grounds That Claims Must Be Arbitrated, and Motion to Strike (Dkt. 30-1 and 39) |
| Receivership Defendants | As defined by the Preliminary Injunction in the *Main Case* |
| Outline | Memorandum from Ice Legal, P.A. to its clients, dated April 19, 2021, Exhibit 1 to Ds' Memo |
| MEC | MEC Distribution LLC |

# INTRODUCTION

Much of the Receiver's introduction is a summary of the 73-page Complaint with a healthy side helping of hyperbole sprinkled with things the Receiver wishes the Complaint had said. Rather than rehash what Ice Legal has already said on this subject (*see*, memoranda supporting its Joined Rule 12 Motions),[1] it will focus on the substance of the Receiver's jurisdictional arguments, such as it is.

## I. The Court has no ancillary jurisdiction over this case.

### A. The Receiver has abandoned all but one of the jurisdictional theories stated or implied in the Complaint.

The Receiver has tacitly abandoned the only two statutory bases for the Court's jurisdiction that he pled in his Complaint: 28 U.S.C. § 1345 (United States as Plaintiff); and 2) 28 U.S.C. § 1367(a) (supplemental jurisdiction). Neither statute is mentioned in the Receiver's Opposition. He also tacitly concedes that the court has neither diversity jurisdiction nor federal question jurisdiction.

The Receiver also concedes by his silence that the vintage judge-made law that granted receivers special jurisdictional privileges—typified by the case cited in the Complaint, *S.E.C. v. Bilzerian*, 378 F.3d 1100 (D.C. Cir. 2004)—has either been superseded by the supplemental jurisdiction statute or modified by that statute to require a "common nucleus of operative fact" test. (Ds' Memo, pp. 8-10). Nor does the Receiver dispute that, even if this special receiver-based jurisdiction still existed, it could not be invoked for the liquidation of an asset such as the

---

[1] Joined Rule 12 Motions: Motion for More Definite Statement; Motions to Dismiss for Failure to Join a Party, Lack of Personal Jurisdiction and Insufficient Process and Service of Process; Motions to Dismiss on the Grounds That Claims Must Be Arbitrated, and Motion to Strike (Dkt. 30-1 and 39)

1

chose in action here, especially given the Second Circuit's strong reservations as to the propriety of allowing a receiver to liquidate an estate. (Ds' Memo, p. 11).

### B. The Receiver did not argue how this case meets the "common nucleus of operative fact test required for "ancillary" (now "supplemental") jurisdiction.

The Receiver relies exclusively on his alternative, non-statutory basis for jurisdiction: the outdated concept of ancillary jurisdiction (Opp., p. 2). The Receiver expends only three paragraphs on this topic and never contests Ice Legal's main point: that ancillary jurisdiction had been codified into "supplemental jurisdiction" of 28 U.S.C. § 1367. In fact, the Receiver never even mentions Ice Legal's key case on this issue: *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (Ds' Memo, p. 6-9).

The significance of *Achtman*—and the Supreme Court case of *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005)—was that non-statutory bases of jurisdiction did not survive the legislature's passage of § 1367. *Achtman* also holds that, when ancillary jurisdiction was codified into § 1367, the "common nucleus of operative fact test" was retained as the means of determining whether cases met the statute's requirement that they "form part of the same case or controversy." *Achtman*, at 335 (Ds' Memo, p. 6).

The Receiver never disputes, therefore, that ancillary jurisdiction (now "supplemental jurisdiction") has always been determined by a "common nucleus" test. As a result, the Receiver's generic ancillary jurisdiction cases that predate the 1990 passage of § 1367 (one from as far back as 1929) are of no relevance. And his more recent case does say that ancillary jurisdiction applies when the two cases are "factually interdependent." *Baliga v. Link Mot., Inc.*, 2022 WL 6091994, at *2 (S.D.N.Y. 2022) (Opp., pp. 2-3). Moreover, *Baliga* cites *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) for that statement—a case that Ice

2

Legal cited for its instruction that "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction … and the burden of establishing the contrary rests upon the party asserting jurisdiction (Ds' Memo, p. 9).

Other cases espouse these same principles. *See*, *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997) ("Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading."); *Village of West Hampton Dunes v. New York*, 89 F.Supp.3d 433, 443 (E.D.N.Y., 2015) ("ancillary jurisdiction applies to …pendent state law claims that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy'… or 'derive from a common nucleus of operative fact.'").

Despite the requirement that this case and the *Main Case*[2] must share a common nucleus of operative fact, the Receiver makes no effort to identify what those shared facts might be, given that he never alleges that Ice Legal participated in the wrongdoing described in the *Main Case*. Instead, he tells the Court that Ice Legal's contention that he cannot meet the "common nucleus" test is laughable, in part because Ice Legal <u>admitted</u> that the test has been met (Opp., p. 3, n. 2). According to the Receiver, Ice Legal made this "admission" in a Motion to Intervene filed in the *Main Case*.

The following table compares the Receiver's representation to this Court with the actual statement by Ice Legal:

---

[2] *Consumer Financial Protection Bureau, et al. v. StratFS, LLC (f/k/a Strategic Financial Solutions, LLC), et al.*, 1:24-cv-00040-EAW-MJR (W.D.N.Y.) (*Main Case*).

3

| Receiver's Representation | Ice Legal's Actual Statement |
|---|---|
| But Defendants talk out of both sides of their mouth on this point: they filed a Motion to Intervene in the Main Case, premised, in part, on the fact that this action "shares with the main action a common question of law or fact[.]" Dkt. No. 680-1 (Emphasis added). (Opp., p. 3) | Here, McNamara has told this Court in the Third-Party case that it has supplemental jurisdiction over that case under 28 U.S.C. §1367(a). <u>Thus, McNamara has represented that the case is "so related to claims in the action within such original jurisdiction [i.e. this case] that they form part of the same case or controversy</u> under Article III of the United States Constitution." 28 U.S.C. §1367(a). <u>While Ice Legal disagrees with this representation</u>, until this Court rules otherwise, its very jurisdiction over the Third-Party case is premised on the notion that the two cases share common questions of law or fact. (*Main Case*, [Dkt. 680-1] pp. 10-11) |

This is yet another example of the Receiver's failure to be candid with the Court and, once again, Ice Legal reluctantly asks the Court to take the appropriate steps to bring the Receiver and his counsel into compliance with their duty of candor to the Court.

In any event, other than this non-existent "admission," the Receiver has made no argument that the cases share a common nucleus of operative fact. Ice Legal presented many reasons why they do not (Ds' Memo, pp. 7-8). Accordingly, the Court should dismiss this case on the grounds that it has no "ancillary" (now "supplemental") jurisdiction.

**II.   The Receiver's claims arising from his Claimant's costs defending the *Main Case* are not ripe.**

In its motion, Ice Legal pointed out that the Receiver lacks Article III standing because the damages claims tied to the outcome of the *Main Case* are not ripe (Ds' Motion, pp. 12-13). In response, the Receiver cites *Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 111 (2d Cir. 2023) for the proposition that "[t]he Second Circuit permits an assertion of future damages if there is a 'substantial risk that the harm will occur.'" (Opp., p. 4). *Saba*, however, was a declaratory judgment case brought for the specific purpose of preventing future harm. As explained by the court itself, "Saba is not suing for retrospective

4

damages…[but rather] 'forward looking' relief 'to prevent the harm from occurring.'" *Id*. at 116, n. 11.

The only other argument raised by the Receiver on this issue is that his Claimant's have already incurred costs in defending the Main Case (Opp., p. 4). There is, however, no allegation, nor can there be, that these defense costs are attributable to any of the Claimants' actions <u>after receiving advice from Ice Legal</u>. The Main Case seeks damages for alleged wrongful actions of the Claimants dating back to 2016 or even earlier.[3] Ice Legal was not retained until March of 2021 (Dkt. 24-1). Thus, even if this portion of the damages alleged by the Receiver is ripe, they are still too speculative and unmoored from the purported "insufficient" advice given by Ice Legal to provide Article III standing.

**III.    The Receiver lacks Article III standing to bring claims belonging to non-receivership entities under the guise that their names are similar to the Receivership Defendants Hedgewick Consulting, LLC and Lit Def Strategies, LLC.**

Ice Legal's motion points out that the Engagement Agreement—a document that supersedes any contrary allegations—shows that it was executed by entities whose names are similar, but not the same as, the names of the Receiver's Claimants. This is not a "factual argument," as the Receiver claims, because the Engagement Agreement nullifies any allegations that it was executed by his Claimants. If he wishes to proceed, the Receiver will need to bring allegations sufficient to justify reforming the contract.

The Receiver also claims that he alleges "the obvious—that his Claimants signed the agreement, citing to paragraphs 6, 15, and 30 of the Complaint. Setting aside that these

---

[3] *Main Case* Complaint (Dkt 366), ¶¶13, 23, 75, 106, 109, 120, 157-159, 181, 192, 221-224, 232-233, 241, 265.

allegations are nullified, paragraph 6 contradicts paragraph 30,[4] not just as to the Jason Blust entities, but as to Strategic itself:

| Paragraph 6 of the Complaint | Paragraph 30 of the Complaint |
|---|---|
| Defendants entered into an Engagement Agreement memorializing their arrangement, which four clients specifically signed: (1) Strategic [defined as Strategic Financial Solutions, LLC (¶3)]; (2) Lit Def Strategies, LLC ("Lit Def," an entity owned by Jason Blust which acted as a liaison between Strategic and the associated Law Firms, which Blust controlled); (4) Hedgewick Consulting, LLC ("Hedgewick," another entity owned by Jason Blust); and (4) MEC Distribution LLC ("MEC") | Three Receivership Defendants signed the Engagement Agreement with Ice Legal: Strategic Family, Inc.; Hedgewick (which signed as Hedgewick, LLC); and Lit Def. |

As shown, only in Paragraph 30 does he allege anything about the difference between "Hedgewick" and "Hedgewick Consulting"—and even then, only that Hedgewick Consulting, LLC signed as Hedgewick, LLC, an averment which also contradicts the Engagement Agreement. He alleges nothing to acknowledge that "Litigation Defense" is different than "Lit Def."

In addition, the Receiver's own confusion over the difference between "Strategic Financial Solutions, LLC" and "Strategic Family, Inc." (the actual signatory) is significant in that these are actual companies with similar names. Thus, the Receiver's derisive assertion that it is "frivolous," "specious" and "gamesmanship" to even point out the difference between his Claimants' names and the names of the other two signatories is wholly unmerited.

**IV.     The Receiver lacks Article III standing on behalf of Hedgewick Consulting, LLC.**

Ice Legal pointed out that, on its face, the magic-wand mechanism of the Preliminary Injunction (Section 9(N)) allowing the Receiver to name Receivership Defendants applies only

---

[4] Paragraph 15 does not have any allegation as to who executed the Engagement Agreement.

6

to non-parties and that Hedgewick Consulting, LLC was already a party when the Receiver waved his wand. (Ds' Memo, pp. 3, 16-17). The Receiver does not make his own arguments as to why Section 9(N) applies and instead relies solely on a ruling by Judge Roemer that it does apply with respect to Fidelis and Bush Lake Trust (Opp., p. 7). That ruling, however, is on appeal. If the Court is inclined to give weight to this ruling, it should await the appellate ruling before deciding this issue.

V.     **The *Wagoner* Rule bars the Receiver's claims.**

The Receiver begins his response on this issue with a representation contrary to his own allegations—that Ice Legal drafted the Engagement Agreement (Opp., p. 7). Paragraph 103 of the Complaint alleges "Strategic was the initial author of the Engagement Agreement." Paragraph 104 alleges that: "In the first draft of the Engagement Agreement, counsel for Strategic interpreted the Parties' agreement to include the fee structure as a "fixed annual fee retainer." This is not a "fact dispute" as claimed by the Receiver—it is the Receiver's own averments—statements to which he is bound. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

Next, he seeks to dispute that the Receiver's Claimants instigated and participated in the purported wrongdoing by saying that the recovery he requests is based on Ice Legal's own alleged misconduct (Opp., p. 8). But the so-called misconduct he identifies is exactly that in which his Claimants participated. For example, he lists a supposedly unlawful termination

7

provision[5] and a conflict waiver (Opp., p. 8)—both of which were drafted by his Claimants for their own express purpose of restricting Ice Legal's ability to bring consumer cases against them, an objective which the Receiver also claims was wrongful (Opp. p. 9).  If Ice Legal was somehow liable to the Receiver's Claimants for negotiating a retainer agreement with them while simultaneously settling the Ice Legal consumer client cases (Opp., p. 9)—which the Complaint does not even allege—then obviously the Receiver's Claimants not only participated but instigated.

It is during this argument, that the Receiver again mischaracterizes his own pleadings, saying "the law firm proposed taking an equity stake in a Strategic" (Opp., p. 9).  In reality, the Complaint alleges:

> [C]ounsel for Strategic and related parties suggested that Ice Legal could be paid some combination of money and "phantom equity," which Strategic used as a form of deferred employee compensation that was linked to the company's valuation.

(¶67).  Thus, by his own pleadings, it was the Receiver's Claimants, not Ice Legal, who first proposed the use of phantom equity.  Secondly, the proposal (which never became part of the agreement) was to pay Ice Legal in <u>phantom</u> equity—compensation based on the value of stock, not actual stock ownership.  Regardless, if merely talking about phantom equity is wrongful, then the Receiver's Claimants not only participated, but instigated that conduct.

Next, the Receiver attempts to downplay the importance of his own Claimants' involvement in the Engagement Agreement by exalting Ice Legal's role as the attorney whose availability was being secured.  The Receiver cites a disciplinary proceeding case (in *Matter of*

---

[5] The oft-repeated protest that the Engagement Agreement did not allow the Claimants to terminate the contract is disconnected from any alleged harm because the Complaint does not allege that the Claimants were ever dissatisfied with Ice Legal's services (or availability for services) but were prevented by the agreement from terminating.

8

*Cooperman*, 83 N.Y.2d 465, 472, 633 N.E.2d 1069, 1071 (1994)), which, despite the Receiver's implication, did not hold that improprieties in a retainer agreement must be attributed exclusively to the attorney—particularly when the "clients" in the agreement were represented in the negotiations by their own counsel who drafted the agreement.

The Receiver next posits that his Claimants cannot be responsible for their own wrongdoing because all the ethical obligations under which he brings his Claims are only those of Ice Legal. (Opp., 13-14). ***First,*** this argument concedes that his claims impermissibly rest solely upon alleged violations of the rules of ethics. ***Second***, the Receiver is suggesting that a client can intentionally induce an attorney to breach ethical rules (and thereby escape its own contractual responsibilities) without committing any wrongdoing under *Wagoner*. Worse (and quite irrationally), he is suggesting that an attorney cannot invoke *Wagoner* because of a public policy interest in enforcing attorney rules of ethics <u>even when there are attorneys on the client's side involved in the inducing</u>. These arguments should be rejected by the Court as conflicting with the purposes of the *Wagoner* Rule (and those of the Rules of Professional Conduct).

**VI.   The Receiver has no standing to bring the Voidable Transfer Claim**

In its Motion, Ice Legal pointed out that, unlike many appointment orders, the one appointing the Receiver does not expressly allow him to bring actions challenging voidable transfers. (Ds' Memo, p. 21). The Receiver responds that "[t]his argument defies basic rules of grammar" because the authorizing language of the Preliminary Injunction uses the words "actions or proceedings" which he says "clearly" include his UVTA claim. But a "basic rule" of <u>comprehension</u> might be to read those words in context. Here, the Receiver can only bring "actions and proceedings" to preserve either the assets of the Receivership Defendants or to carry out the Receiver's mandate. (Main Case, Preliminary Injunction (Dkt. 184), Section IX(L), pp.

9

19-20).  A claim to avoid a transfer is not an asset of the estate. *See In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000).  Such a claim belongs to the Claimants' creditors, not the Claimants. §273 NY-UTVA.  This limitation in the Receiver's power explains why many Courts include the additional language regarding voidable transfer claims.  The Receiver's interpretation would mean that these words are meaningless and unnecessary surplusage in the orders that use them.

**VII.  The Receiver lacks standing because he did not plead (nor can he) that the Claimants are creditors of the debtor.**

In Response to this argument, the Receiver cites cases where the debtor was dominated by a wrongdoer—the so-called "Evil Zombie" cases. (Opp., p. 15-16).  The Receiver has made no such allegations here that any specific Claimants were dominated by any wrongdoer.

**VIII.  Conclusion**

Ice Legal therefore requests that an order be entered dismissing this case for lack of subject matter jurisdiction.

Dated: July 10, 2025

**Lundergan Legal, LLC**

*/s/ Amanda L. Lundergan*
Amanda L. Lundergan, Esq.
Post Office Box 211474
Royal Palm Beach, FL 33421
Direct: (561) 779-4126
Assistant: (561) 629-2643
Email:  amanda@lunderganlegal.com

*Attorneys for Defendants,*
*Ice Legal, P.A., Thomas Ice and*
*Ariane Ice*